BRYAN K. CLAUSON, IN HIS )
CAPACITY AS GUARDIAN AD LITEM, )
FOR R.D., )
        Plaintiff )
        )
        )
       v. )    Civil Action No. 11-30206-MAP
        )
        )
CITY OF SPRINGFIELD, ALAN )
INGRAM, MITCHELL D. CHESTER, )
BUREAU OF SPECIAL EDUCATION )
APPEALS OF THE )
MASSACHUSETTS DEPARTMENT )
OF EDUCATION, AND ANGELO )
MCCLAIN, )
        Defendants

## REPORT AND RECOMMENDATION WITH REGARD TO CROSS-MOTIONS FOR SUMMARY JUDGMENT (Document Nos. 5 and 19)
February 1, 2012

NEIMAN, U.S.M.J.

    This is an action in which Bryan Clauson ("Plaintiff"), an attorney and the educational surrogate parent ("ESP") of R.D., a seventeen year old special education student who was enrolled in the Springfield Public Schools, seeks judicial review of a decision by the Bureau of Special Education Appeals ("BSEA"). In a motion for summary judgment, Plaintiff asserts that, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482, the right to be accompanied and advised by counsel requires the Department of Children and Families ("DCF") and the Department of Elementary and Secondary Education ("DESE") to provide a funding mechanism for such purposes. Plaintiff also asserts separately that retention of counsel

to assist him in filing for and prosecuting a hearing before the BSEA is a "reasonable expense" under the Massachusetts Code of Regulations for which an ESP is entitled to reimbursement by the local educational agency.

The City of Springfield and the Springfield Public Schools (together the "City Defendants") have opposed the motion, arguing that attorney's fees are not "reasonable expenses" permitted under the Massachusetts regulations. In addition, the BSEA, the DESE, and the DCF (together the "State Defendants") have filed a cross-motion for summary judgment, arguing that Plaintiff's request for attorney's fees exceeded the Hearing Officer's authority and that, to the extent he seeks other forms of relief, such relief is barred by the Eleventh Amendment.

The motions have been referred to the court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons detailed below, the court will recommend that Plaintiff's motion be denied with respect to the DESE and the DCF and remanded with respect to the City Defendants and the BSEA. The court will also recommend that the State Defendants' motion for summary judgment be allowed as it concerns the DESE and the DCF.

I. BACKGROUND

The parties have not submitted statements of undisputed facts. Nonetheless, the court believes that some background facts beyond those provided by the parties are necessary to understand the current dispute and place the legal issues the parties raised in proper context. The court therefore includes the following facts gleaned from various documents in the administrative record, including Plaintiff's initial request for a BSEA hearing.

2

When R.D. was in the fifth grade, he was placed into the custody of DCF. (Administrative Record ("A.R.") at 4, 25.) Around that time, R.D. was prescribed anti-psychotic medication and began what emerged as a pattern of truancy and leaving school grounds. (Id.) In June of 2007, Plaintiff, an attorney, was appointed by the Hampden County Juvenile Court to serve as R.D.'s guardian ad litem/next friend and ESP. (A.R. at 12.) In this capacity, Plaintiff was authorized to "bill the Trial Court no more than 10 hours per fiscal year" and was informed that "if additional services are required it is the responsibility of the guardian ad litem to seek approval of additional time prior to the provision of such services." (Id.)[1]

At some point prior to April of 2010, R.D. went on the run and was missing for an unspecified but extended period of time. (A.R. at 5.) It is unclear precisely when R.D. went missing and when he returned. But in April of 2010, Plaintiff rejected an individualized education plan ("IEP") because he had not yet been provided with an evaluation of R.D., which he had requested to determine whether R.D.'s truancy was related to his disability. (A.R. at 33.) Plaintiff also rejected the IEP because he disagreed with the proposal that R.D. receive IEP services outside the general education classroom for more than 60% of the time. (A.R. at 34.)

In May of 2010, a school psychologist evaluated R.D. in light of Plaintiff's "request that the evaluator determine whether [R.D.'s] attendance issues are related to his disabilities and make recommendations how the attendance issues can be resolved

---

[1] Although this issue was touched upon during the hearing before the court, it is unclear from the administrative record whether Plaintiff pursued this avenue as a means of funding his own efforts before the BSEA.

so [R.D.] can make effective progress." (A.R. at 13-24.)  Although the Springfield Public Schools later maintained before the BSEA that R.D.'s attendance issues, as they relate to his disability, were addressed and answered in the negative by the evaluation (A.R. at 41 n.1), it is not clear to the court that the evaluation is as definitive as the Springfield Public Schools suggest.  In any event, in June of 2010, Plaintiff again rejected the IEP, albeit partially, because it failed to mention R.D.'s attendance issues and because he had not yet received the requested evaluation to determine whether those issues were related to his disability.  (A.R. at 35.)  Plaintiff did, however, consent to the placement of R.D. in a separate private day school.  (A.R. at 36.)

What transpired next is also unclear from the record, but on September 16, 2011, Plaintiff sent an email to the DCF indicating that he had reached an impasse with the school district over R.D.'s IEP, specifically his placement.  (A.R. at 32.)  Plaintiff also noted that he had agreed to attend a mediation session on September 29, 2010, but was "certain" that the school district would not agree to the requested changes and believed that a hearing before the BSEA was his only recourse.  (Id.)  Accordingly, Plaintiff requested that the DCF retain an attorney to prepare a hearing request and represent him at the BSEA; Plaintiff noted that he did not believe the juvenile court would pay him to file such a request.  (Id.)  On September 22, 2010, an individual from the DCF, who the State Defendants' counsel represented to the court had supervisory authority, responded to Plaintiff's email, stating that, after "some discussion," the DCF determined that its "contract is not to assist attorneys/GAL's in a BSEA hearing."  (Id.)  Accordingly, Plaintiff was informed that the DCF would not be making the requested referral.  (Id.)

4

On January 11, 2011, Plaintiff himself filed a request for a hearing before the BSEA. In some contrast to his request to the DCF, Plaintiff asserted that (1) an ESP's retention of an attorney is a "reasonable expense" under 603 CMR 28.07(7)(c), (2) an ESP has a right to an attorney at a BSEA hearing, and (3) that the right to an attorney affirmatively obligates the DCF, the DESE, or the school district to provide a funding mechanism by which the ESP may retain counsel. (A.R. at 2-11.) Plaintiff's request for a hearing, it should be noted, did not involve any issues with regard to R.D.'s IEP. In response, the Springfield Public Schools filed a motion to dismiss Plaintiff's hearing request, arguing that the issues presented by Plaintiff's motion lay outside the jurisdiction of the BSEA. (A.R. at 41-44.)

Over the next month and a half, a flurry of motions, oppositions and supplemental filings were filed with the BSEA. Specifically, on January 24, 2011, Plaintiff filed an opposition to the Springfield Public Schools' motion to dismiss as well as his own motion to join the DCF as a necessary party. (A.R. at 45-65.) Shortly thereafter, on January 31, 2011, Plaintiff filed a motion to join the DESE as a necessary party. (A.R. at 66-80.) In turn, the DESE filed an opposition to that motion. (A.R. at 84-88.) Plaintiff then filed a supplemental opposition to the Springfield Public Schools' motion to dismiss (A.R. 91-100), and the DESE filed a supplemental opposition to Plaintiff's motion to join (A.R. at 102-04). On February 22, 2011, Plaintiff filed a reply to the DESE's opposition to his motion to join. (A.R. at 109-112.) On February 23, 2011, the DESE objected to an exhibit offered by Plaintiff which it claimed came from its website and contained certain inaccuracies. (A.R. at 121-27.) That same day, the DCF too filed a motion to dismiss Plaintiff's hearing request. (A.R. January 31, 2012at 113-

119.)

On April 12, 2011, the Hearing Officer issued a written decision. She first noted that, as reflected in a February 11, 2011 order, an agreement had been reached between her and the parties that the motions to join the DESE and the DCF would be held in abeyance until she rendered a decision on the Springfield Public Schools' motion to dismiss. (A.R. at 128.) The Hearing Officer then went on to allow the motion to dismiss and, in due course, Plaintiff filed the current action. (A.R. at 131.)

## II. STANDARDS OF REVIEW

This case involves somewhat overlapping standards of review. *See North Reading Sch. Comm. v. BSEA*, 480 F. Supp. 2d 479, 481 n.1 (D. Mass. 2007) ("In a case like this, summary judgment is merely the device for deciding the issue, because the procedure is in substance an appeal from an administrative determination, not a summary judgment."). In appeals from administrative decisions made pursuant to the IDEA,"the burden rests with the complaining party" -- here, Plaintiff -- "to prove that the agency's decision was wrong." *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 991 (1st Cir. 1990). The IDEA provides that in actions involving such appeals, a federal district court:

> (i) shall receive the records of the administrative proceedings;
> 
> (ii) shall hear additional evidence at the request of a party; and
> 
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(C). Here, the court has received the records of the administrative proceedings, although not a transcript of the hearing itself, and none of

the parties has requested that the court consider or hear additional evidence.

The IDEA's requirement that a reviewing court "base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982); *Doe v. Attleboro Pub. Sch.*, 2011 WL 3854649, at *5 (D. Mass. Aug. 31, 2011). To the contrary, "[a]lthough the exact quantum of weight is subject to the district judge's exercise of informed discretion, the judge is not at liberty either to turn a blind eye to administrative findings or to discard them without sound reason." *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1087 (1st Cir. 1993) (citations omitted). Thus, the level of scrutiny applied to administrative decisions under the IDEA "requires a more critical appraisal of the agency determination than clear-error review entails, but which, nevertheless, falls well short of complete de novo review." *Id.* at 1086; *see also Lessard v. Wilton Lyndeborough Coop. Sch. Dist.*, 518 F.3d 18, 24 (1st Cir. 2008) ("judicial review falls somewhere between the highly deferential clear-error standard and the non-deferential de novo standard").

Acknowledging the IDEA standard of review, the parties nonetheless appear content to have the court address the legal issues at play in the context of traditional summary judgment standards. *See Springfield Sch. Comm. v. Doe*, 623 F. Supp. 2d 150, 155 (D. Mass. 2009) (motion for summary judgment used "as a vehicle for resolving an IDEA-based dispute . . . do[es] not alter the basic summary judgment standard, but require[s] the court to determine whether either party deserves judgment as a matter of law on facts that are not disputed."). Summary judgment is appropriate

when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review." *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 205 (1st Cir. 2006).

### III. DISCUSSION

At the outset, the court questions, as it did at the hearing on the various motions, whether the DESE and the DCF are properly before this court. Plaintiff initially sought a hearing before the BSEA that included only him, in his capacity as guardian ad litem for R.D., and the Springfield Public Schools as the respondent. Only later did Plaintiff file motions to join both the DESE and the DCF as parties. However, as described, the Hearing Officer agreed with the parties that "rulings on the motions to join DESE and DCF will be held in abeyance until issuance of a ruling on th[e] motion to dismiss." (A.R. at 128.) The precise terms of that agreement, however, are unclear because the Hearing Officer did not elaborate further and neither her February 11, 2011 order, which memorialized the agreement, nor a transcript of the proceedings has been included in the administrative record.

In any event, after allowing the Springfield Public Schools' motion to dismiss, the Hearing Officer did not address Plaintiff's motions to add the DESE and the DCF as parties.[2] Thus, the DESE and the DCF were never formally made parties to the administrative dispute. Nonetheless, the Hearing Officer referred to both the DESE and the DCF in her decision as if they were parties and, in addition, concluded that the DCF's motion to dismiss should be granted. (A.R. at 131.) In her conclusion and order, however, the Hearing Officer did not mention the DCF's motion to dismiss and determined only that "the School's Motion to Dismiss, with prejudice, is ALLOWED as to all of the claims raised in the ESP's Hearing Request." (Id.)

Regardless, neither the DESE nor the DCF, either in their filings before this court or when questioned on this point, raised any objection to their status as parties in this case. Moreover, Plaintiff has pursued this case via a motion for summary judgment, as if his independent claims against the DESE and the DCF could be pursued separately from any appeal of the BSEA order. In fact, Plaintiff filed his motion for summary judgment before the administrative record was filed with this court. The State Defendants, in turn, have filed their own motion for summary judgment.

A. Plaintiff's Claims Against the DESE and the DCF

In the first of his myriad arguments seeking funding for attorneys retained by ESPs, Plaintiff asserts that, pursuant to the IDEA, a party to an administrative hearing has "the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities." 20

---

[2] The court notes that the DCF did not oppose Plaintiff's motion to join it as a party before the BSEA and instead only filed a motion to dismiss.

U.S.C. § 1415(h)(1). That is an accurate exposition of the statutory provision. Making a significant leap, however, Plaintiff argues that this right requires the DESE and the DCF to fund an ESP's choice of counsel because the IDEA "clearly did not contemplate that the DESE and the DCF could so easily bypass the Due Process safeguards by simply requiring the ESP or foster parent to fund these rights." (Plaintiff's Motion for Summary Judgment ("Pl. Mot. for Summary Judgment") at 16.) For the reasons which follow, the court is unwilling to make the interpretive leap Plaintiff suggests.

Plaintiff points to no authority -- and the court is not aware of any -- that a statutory right to be accompanied by counsel at an administrative hearing obligates a state agency to provide a funding mechanism to effectuate that right. Quite to the contrary, courts have reached the opposite conclusion regarding the right to counsel at an administrative hearing. *See Mallett v. Barnhart*, 2002 U.S. Dist. LEXIS 26679, *at 15 n.2 (E.D.N.Y. Sept. 5, 2002) (noting that although a claimant seeking disability benefits "has the right to be represented by legal counsel or another person," the right "does not rise to constitutional dimensions," and the Social Security Administration accordingly "is not required to provide counsel for claimants."); *see also Turner v. Rogers*, 131 S. Ct. 2507, 2517 (2011) (declining to recognize a right to counsel at civil contempt hearings threatening incarceration for indigent individuals who have failed to comply with a child support order because "the Sixth Amendment does not govern civil cases" and "the Court previously had found a right to counsel '*only*' in cases involving incarceration, not that a right to counsel exists in *all* such cases.") (emphasis in original).

To be sure, Plaintiff also asserts that the requirement in subparagraph (a) of section 1415 -- which mandates that the state "establish and maintain procedures . . . to

10

ensure that children with disabilities and there parents are guaranteed procedural safeguards" -- means that the State is required to fund counsel. The court disagrees. Simply put, the IDEA statute cannot be twisted into the interpretation Plaintiff seeks; for administrative hearings, "the 'right to representation' is merely the right to choose to have representation at the hearing." *Mallett*, 2002 U.S. Dist. LEXIS 26679 at *15. Moreover, Plaintiff's argument fares no better on constitutional grounds. *See Lessard v. Atkins*, 1985 U.S. Dist. LEXIS 20478, at *18 (D. Mass. Apr. 23, 1985) (rejecting plaintiffs' argument that their due process was violated because they were not represented by counsel before the Massachusetts Department of Public Welfare because "[d]ue process in this context guarantees the right to have counsel present, but it does not require the state to provide counsel or otherwise ensure that the recipients receive legal counsel."). In short, the statutory right to be accompanied by an attorney, as a procedural safeguard, does not translate into a right to counsel funded by the State.

Plaintiff's construction of the statute, in the court's view, also runs afoul of the Spending Clause, pursuant to which Congress enacted the IDEA. U.S. Const., Art. I, § 8, cl. 1; *Arlington Central Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006). As the Supreme Court explained, "[l]egislation enacted pursuant to the spending power is much in the nature of a contract and therefore, to be bound by federally imposed conditions, recipients of federal funds must accept them voluntarily and knowingly." *Id.* at 296. In other words, for present purposes, the court must ask itself whether a state official deciding whether it should accept IDEA funds "would clearly understand that one of the obligations of the Act is the obligation to [provide a public funding mechanism for

11

counsel]." *Id.* The court finds that the general provision of the IDEA guaranteeing a "right to be accompanied and advised by counsel", 20 U.S.C. § 1415(h)(1), "does not even hint that acceptance of the IDEA funds makes a State responsible for [maintaining a public mechanism for funding counsel]," and therefore "fails to provide the clear notice that is required under the Spending Clause." *Id.* at 297, 298. Against this backdrop, the court cannot, without more, traverse the divide separating the IDEA's guarantee of a right to be accompanied and advised by counsel and Plaintiff's argument that such a right creates an affirmative obligation on the part of states to publicly fund counsel.[3]

Persevering, Plaintiff next argues that the DCF's own protocol requires it to fund counsel selected by the ESP for proceedings before the BSEA. (*See* A.R. at 59-60 (Protocols for Requesting Legal Services for DCF-Involved Children With Special Education Disabilities).) Plaintiff is not explicit about what aspects of the DCF's protocol requires such funding, but the protocol does allow an ESP to request "an attorney to assist him/her in resolving the dispute" and provides "[e]xamples of the kinds of issues that might trigger a *request* for legal assistance." (Id. at 59 (emphasis added).) The

---

[3] Although the State Defendants make essentially this argument, they incorrectly frame it as an Eleventh Amendment sovereign immunity issue, rather than an issue regarding the Spending Clause. Any Eleventh Amendment claim here, however, is without merit as it is clear that a state's acceptance of IDEA funds constitutes a waiver of its sovereign immunity. *See Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 280-89 (5th Cir. 2005) (en banc) (holding that state's waiver of Eleventh Amendment immunity to actions under the IDEA was knowing and finding no independent constitutional bar which prevented Congress from conditioning the receipt of federal funds on a state's waiver of Eleventh Amendment immunity); *M.A. ex rel. E.S. v. State-Operated Sch. Dist.,* 344 F.3d 335, 346-51 (3rd Cir. 2003) (holding that "by accepting IDEA funds, the state . . . waived its Eleventh Amendment immunity from claims brought pursuant to the IDEA in federal court."); *John T. v. Iowa Dep't of Educ.*, 258 F.3d 860, 864 (8th Cir. 2001) (noting that the state had "waived its Eleventh Amendment immunity by receiving funds appropriated under IDEA.").

protocol, however, makes clear that a request for counsel will only be granted if the DCF obtains an Area Director's approval. (Id.) And, although the protocol does not indicate what information an Area Director may consider in deciding whether to approve a request for counsel or by what standard, we do know that the Area Director here did not join Plaintiff's request because the protocol does not contemplate providing counsel to ESPs who are themselves attorneys. (*See* A.R. at 32 (the DCF's determination that its "contract is not to assist attorneys/GAL's in a BSEA hearing.").) Plaintiff does not challenge that decision as arbitrary and capricious; he merely asserts that the protocol itself mandates that the DCF fund his request. That assertion, the court finds, is not an accurate reading of its provisions.

Still attempting to craft an argument, Plaintiff posited at the hearing before this court that the DCF's obligation to fund counsel should flow from the fact that R.D. is in its custody. Although this argument is entirely undeveloped, Plaintiff appears to assert that the DCF, standing *in loco parentis*, is obligated to act in R.D.'s best interests, which in this case necessitates the hiring of an attorney. Plaintiff's argument, however, suffers from the same infirmities as his argument regarding the IDEA, namely, a tendency to leap from one proposition to another with little if any legal support. Thus, even assuming that the DCF's custody of R.D. requires it to act in his best interests, Plaintiff offers no reason as to why this responsibility carries with it an obligation to fund counsel. Without more, that is simply not what the law requires. *See Mallett v.* 2002 U.S. Dist. LEXIS 26679, *at 15 n.2; *Turner*, 131 S. Ct. at 2517.

In sum, the court concludes that the IDEA's guarantee of the right to be accompanied and advised by counsel does not obligate either the DCF or the DESE to

13

provide a funding mechanism for counsel before the BSEA. Accordingly, it will recommend that the State Defendants' motion for summary judgment be allowed as it applies to those two agencies.

B. Plaintiff's Claims Against the City Defendants

Massachusetts Regulation 603 CMR 28.07(7)(c) provides that "an educational surrogate parent shall not receive financial remuneration from the district except that the school district shall reimburse the person for reasonable expenses related to the exercise of his or her responsibilities as an educational surrogate parent for a student enrolled in the district." 603 MASS. CODE REGS. 28.07(7)(c) (2011). Plaintiff argues, pursuant to this provision, that his retention of counsel to assist him as an ESP in filing for and prosecuting a hearing before the BSEA is a "reasonable expense" for which he should be reimbursed. For the following reasons, the court will recommend that the matter be remanded to the BSEA for the limited purpose of addressing this issue in the first instance.[4]

When requesting a hearing before the BSEA, Plaintiff identified the following issue to be resolved by the Hearing Officer: "[w]hether the retainer of an attorney by the [ESP] to file and prosecute a Hearing request, where the parties cannot resolve the underlying disputed issue, is a 'reasonable expense related to the exercise of the

---

[4] Although Plaintiff argued in his motion that both the State Defendants and the City Defendants were required to reimburse him for "reasonable expenses," he conceded at the hearing that, as the State Defendants point out, the applicable regulation provides only that "the *school district* shall reimburse the [ESP] for reasonable expenses related to his or her responsibilities." 603 CMR § 28.07(7)(c) (emphasis added). Accordingly, the court limits Plaintiff's argument to the City Defendants only.

14

[ESP's] responsibilities." (A.R. at 3.) In her decision allowing the Springfield Public Schools' motion to dismiss, however, the Hearing Officer sidestepped the issue. Relying only on the IDEA itself, the Hearing Officer concluded that she lacked the authority to award attorney's fees because of the "well-settled" principle regarding "the BSEA's lack of authority to award attorney fees to prevailing parties, as original jurisdiction over such claims lies with the appropriate state or federal district court." (A.R. at 131.) Indeed, the BSEA does lack authority to award attorney's fees to prevailing parties, which, pursuant to 20 U.S.C. § 1415(i)(3)(B)(i), are within the exclusive province of the courts. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I), (II), and (III) ("In any action or proceeding brought under this section, the court, in its discretion, may award [to a prevailing party or in certain circumstances a prevailing State educational agency] reasonable attorneys' fees as part of the costs").

Plaintiff's hearing request, however, posed a different question, namely, whether the state regulation -- independent and apart from the IDEA -- requires ongoing remuneration of counsel in the manner suggested. The mere fact that Congress opted to leave to the courts the award of fees to "prevailing parties," Plaintiff seems to argue, does not necessarily foreclose the BSEA from ordering remuneration for attorneys pursuant to 603 MASS. CODE REGS. 28.078(7)(c). Thus, should Plaintiff prevail on his argument that an attorney's fees for seeking and pursuing a hearing request constitute "reasonable expenses" to which an ESP is entitled, the BSEA may well have the authority to order a school district to pay such expenses. *Cf. In re Pentucket Reg'l Sch. Dist.*, BSEA #08-5616 (Nov. 14, 2008) (ordering the school district to reimburse parents for transportation costs pursuant to 603 CMR 28.07(6)).

15

For its part, the court has its doubts as to whether the Massachusetts regulation, which refers exclusively to "reimburse[ments]" for "reasonable expenses," applies to an attorney's fee which, as here, has not yet been incurred. But, as all the parties agreed at the hearing, this regulatory interpretation should be resolved in the first instance by the Hearing Officer. *See Doe ex rel. Doe v. Attleboro Public Schools*, 2011 WL 3854649, at *8 (D. Mass. Aug. 31, 2011) (remanding to the BSEA when it appeared to apply the incorrect legal standard). Accordingly, the court will recommend that the matter be remanded to the BSEA for this limited purpose.

### III. CONCLUSION

For the reasons stated, the court recommends that the State Defendants' motion for summary judgment be ALLOWED as it concerns the DESE and DCF but not the BSEA. The court further recommends that Plaintiff's motion for summary judgment be DENIED with respect to the DESE and DCF, but REMANDED to permit the Hearing Officer an opportunity to decide whether an attorney's fee for preparing and pursuing a hearing before the BSEA constitutes a "reasonable expense" under the Massachusetts regulation.[5]

---

[5] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.

DATED: February 1, 2012

/s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.